***********
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Deluca, and the briefs and oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ************
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed at all times relevant herein.
3. Defendant-employer was insured by Liberty Mutual Insurance Company at all times relevant herein.
4. Plaintiff's average weekly wage is $333.74, yielding a compensation rate of $222.50 per week.
5. The parties stipulated into evidence the Pre-Trial agreement, plaintiff's medical records and plaintiff's personnel file.
6. The issues before the Full Commission are whether plaintiff suffered a compensable injury by accident to her back, and, if so, what benefits, if any, she is entitled to receive; and whether plaintiff's claim is barred pursuant to N.C. Gen. Stat. § 97-22 or any other part of the Act.
 ************
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on September 1, 1954. Plaintiff completed the sixth grade in Mexico. After leaving the sixth grade, she studied for one year to become a sewing machine operator. She worked as a seamstress for almost 20 years. Plaintiff has been in the United States for approximately 12 years. *Page 3 
2. On April 9, 2001, plaintiff began work for defendant-employer as a sewing machine operator/seamstress. Plaintiff's job required her to bend down near floor level to get material and then lift up, placing the material on a table that was chest high. In 2004, plaintiff worked first shift, which normally started around 3:00 a.m. and ended around 3:00 or 4:00 p.m.
3. On December 20, 2004, plaintiff attempted to pick up five pounds of socks off the floor to put on her table for her sewing machine. As plaintiff bent over, she experienced back pain. Plaintiff felt that the pain "paralyzed" her and that she could not stand up. She then moved back a little bit and felt a burning sensation run down her legs. Prior to this incident, plaintiff had never had any back or knee problems. The Full Commission finds plaintiff credible and that she sustained a specific traumatic incident to her back on December 20, 2004.
4. Following the incident, plaintiff asked her co-worker for some Vicks VapoRub for her back pain. Later that morning, another co-worker gave plaintiff a pain pill. Although there was a plant nurse at the facility, plaintiff did not go to the nurse that day because she had used Vicks VapoRub and taken the pain pill she received from her co-worker.
5. Plaintiff did not report the incident to defendant-employer on December 20, 2004 because her supervisor was not at work. However, on December 21, 2004, plaintiff told Kim, a supervisor, about the incident. Plaintiff's supervisor completed a report about the incident. After reporting the incident to Kim, plaintiff stayed at work and finished her shift. On December 22, 2004, plaintiff missed one day of work due to back pain.
6. On January 4, 2005, plaintiff told Barbara, another supervisor, about the incident. Also on January 4, 2005, plaintiff sought treatment with Larry Elliott, P.A. at HealthPlus. Plaintiff told Mr. Elliott that her back was hurting and that she did a lot of heavy lifting and *Page 4 
bending at work. Plaintiff was given pain medication, but it made her drowsy. She used her own insurance to cover the treatment costs for that day.
7. At the end of the workday on January 11, 2005, plaintiff felt pain in her side which caused her to lean to her other side, and she collapsed. Plaintiff went to see Mr. Elliott for back and leg pain. During this visit, Mr. Elliott changed her pain medicine and took her out of work for three days. On January 14, 2005, plaintiff had an x-ray and her out of work note was extended until January 20, 2005. An MRI performed on January 22, 2005, showed no significant degeneration or protrusions.
10. On January 25, 2005, plaintiff requested leave under the Family Medical Leave Act (FMLA). This request was approved by defendant-employer and plaintiff remained out of work.
11. In January 2005, plaintiff also began treatment with Dr. Lawrence M. Bridge, a chiropractor, for back pain and a feeling of coldness in her legs. Dr. Bridge wrote plaintiff out of work from January 19, 2005 until February 2, 2005 due to low back and leg pain.
12. The record is absent any notes that a doctor took plaintiff out of work from February 2, 2005 until February 7, 2005, although plaintiff was on FMLA at the time.
13. On February 7, 2005, Mr. Elliott continued plaintiff out of work until March 3, 2005. On February 9, 2005, an x-ray of plaintiff's right hip was normal.
14. On March 1, 2005, plaintiff saw Dr. Ranjan Roy at Piedmont Neurosurgery and Spine for right hip, knee and ankle pain. Dr. Roy noted that he felt plaintiff's symptoms were more likely muscular in the back and hip and that her pain was probably not radiculopathy. Dr. Roy recommended an orthopedic consultation as well as evaluation by a pain clinic. Dr. Roy kept plaintiff out of work until April 11, 2005. *Page 5 
15. On March 10, 2005, plaintiff saw Dr. Henry Tellez, a board certified neurologist at Sandhills Neurologists. Dr. Tellez conducted plaintiff's examination in Spanish and plaintiff informed Dr. Tellez about her December 20, 2004 injury. Dr. Tellez found no neurological findings that supported plaintiff's complaints of pain, but recommended she have a bone scan to rule out any underlying malignancy in her bone, as well as nerve conduction studies to exclude a radicular problem or a plexopathy. The March 14, 2005 nerve conduction study was negative and the March 15, 2005 bone scan showed mild degenerative changes involving plaintiff's right knee and feet.
16. On April 5, 2005, Mr. Elliott continued plaintiff out of work until May 5, 2005.
17. On April 8, 2005, plaintiff saw Dr. Tellez again for chronic pain in the upper right and lower back, ipsilateral knee, and both feet. Dr. Tellez referred plaintiff to Dr. Vann Austin, a rheumatologist, and discharged her from his care. He also referred plaintiff to Dr. James Rice, a board certified orthopedist.
18. In his deposition, Dr. Tellez testified that he could not pinpoint a clear reason or etiology for plaintiff's back pain, but that arthritis probably explained her leg pain. Although he never took her out of work, Dr. Tellez stated that it was hard to say whether plaintiff should have been out of work from March 10, 2005 to April 8, 2005 or whether she should have had work restrictions. Dr. Tellez testified that the problems for which he treated plaintiff could be related to her December 20, 2004 injury and that there was a possibility that the injury was a significant contributing factor to her current problems.
19. On April 25, 2005, plaintiff was laid off from her employment with defendant-employer. Plaintiff had not worked for defendant-employer since January 11, 2005. *Page 6 
20. On April 20, 2005, plaintiff saw Dr. Rice. Dr. Rice felt plaintiff had lumbar disc disease, placed her on a Medrol DosePak and Flexeril, and kept her out of work. Plaintiff was seen by Dr. Rice's physician's assistant, Charles Kelley, on April 22, 2005 and, on May 6, 2005, plaintiff was continued out of work for one month due to her continued complaints of pain. On June 1, 2005, Dr. Rice referred plaintiff to Dr. Zane Walsh, a physiatrist, for pain management and released plaintiff to return to work.
21. In his deposition, Dr. Rice stated that plaintiff was not at maximum medical improvement and did not have a permanent partial impairment rating. Dr. Rice testified that as of June 1, 2005, plaintiff had a lumbar strain that had not resolved, although most lumbar strains resolve within three to six months. Dr. Rice testified that plaintiff's back pain is more likely than not related to the December 20, 2004 injury and that the incident is more than likely a significant contributing to factor to her current condition. Based on the testimony of Dr. Tellez and Dr. Rice, the Full Commission finds that plaintiff's current back problems are causally related to her injury on December 20, 2004.
22. On June 11, 2005, Dr. Bridge diagnosed plaintiff with a lumbar disc displacement, lumbosacral radiculitis, lumbar/sacrum myofascitis, sacroiliac pain and sciatica. He also noted that there was a reasonable probability that her condition resulted from plaintiff's December 20, 2004 injury.
23. On June 30, 2005, plaintiff saw Dr. Walsh for hip and back pain. Dr. Walsh diagnosed chronic low back pain but found no evidence of disc injury and recommended physical therapy. *Page 7 
24. On November 2, 2005, plaintiff was seen by Dr. Dennis Yun at UNC Hospital. Dr. Yun diagnosed chronic low back pain and recommended a functional capacity evaluation and that plaintiff see a physiatrist. Dr. Yun had no further treatment recommendations.
25. On May 23, 2006, plaintiff was seen by her family doctor, Dr. John Woodyear, for continued back pain.
26. Plaintiff has not looked for any work since June 1, 2005 due to her back pain, leg pain.
27. Plaintiff received $1400.00 in short-term disability benefits from February 1, 2005 through April 30, 2005. The disability premiums were paid for by plaintiff.
28. As the result of the specific traumatic incident, plaintiff was disabled and incapable of working in any employment from January 11, 2005 until June 1, 2005, when she was released to return to work.
 ************
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. In this case, plaintiff sustained a back injury during a judicially cognizable time period in that she experienced back pain while lifting socks on December 20, 2004. Fish v. Steelcase, Inc., 116 N.C. App. 703,707, 449 S.E.2d 233, 237 (1994), cert. denied, 339 N.C. 737,449 S.E.2d 233, 237. Thus, on December 20, 2004, plaintiff sustained an injury by accident to *Page 8 
her back arising out of and in the course of her employment with defendant-employer as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
3. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). In this case, Dr. Rice testified that plaintiff's back condition was more likely than not related to the December 20, 2004 injury and that it is more than likely a significant contributing factor to her current condition. Dr. Tellez testified that the problems for which he treated plaintiff could be related to her December 20, 2004 injury and that there was a possibility that the injury was a significant contributing factor to her current problems. Thus, the opinions of Dr. Rice and Dr. Tellez, taken together, are more than mere speculation and are sufficient to support a finding that plaintiff's back problems are related to her December 20, 2004 injury. Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000).
4. Plaintiff reported the December 20, 2004 injury by accident to her supervisor on December 21, 2004. As such, defendants received actual notice and plaintiff's claim is not barred under N.C. Gen. Stat. §97-22.
5. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable *Page 9 
effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russellv. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
6. Due to her injury by accident, plaintiff was disabled from any employment from January 11, 2005 until June 1, 2005, when plaintiff was released to return to work. However, plaintiff did not meet her burden to prove that after June 1, 2005, she was unable to obtain employment after a reasonable effort or that it was futile for her to seek employment because of other factors. She was capable of some work and no doctor took her out of work. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, supra.
7. Plaintiff is entitled to temporary total disability compensation at a rate of $222.50 per week beginning January 11, 2005 and continuing until June 1, 2005. N.C. Gen. Stat. § 97-29.
8. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including physical therapy and pain management. N.C. Gen. Stat. §§ 97-2(19); 97-25.
9. Defendants are not entitled to a credit for the short-term disability paid plaintiff, as plaintiff paid the disability premiums. N.C. Gen. Stat. § 97-42. *Page 10 
 ************
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at a rate of $222.50 per week beginning January 11, 2005 and continuing until June 1, 2005.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including physical therapy and pain management.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendants shall bear the costs, including an expert witness fee for Dr. Rice in the amount of $500.00 and Dr. Tellez in the amount of $400.00, if not already paid by defendants.
This 4 day of December, 2007.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________ *Page 11 
BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ BUCK LATTIMORE COMMISSIONER